IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CATHETER CONNECTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>IVERA MEDICAL CORPORATION, a California corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PROTECTIVE ORDER<br><br>Case No. 2:14-cv-70 TC<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Brooke Wells |

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Defendant Ivera Medical Corporation seeks a Protective Order preventing information designated as "attorney eyes only" from disclosure to Charity Williams. The Court heard argument concerning this motion on August 7, 2014.[1] After further review of the parties' memoranda, relevant case law and having heard argument, the Court finds there is not an unacceptable opportunity for inadvertent disclosure in this case. Accordingly, the Court enters the following order DENYING Defendant's motion.

BACKGROUND

Catheter Connections and Ivera are competitors in the medical device industry. Each sells disinfecting caps for valves on IV line connectors and this suit concerns alleged patent infringement, violations of § 43 of the Lanham Act, and unfair competition under both Utah and California law.[2] A preliminary injunction was previously granted against Defendant Ivera and certain matters concerning that decision are on appeal.

---

[1] Docket no. 256.

[2] Amended Complaint p. 2, docket no. 25.

The instant dispute centers on the production of "attorneys eyes only" or "outside counsel only" information that is produced under the Standard Protective Order operating in this case pursuant to Local Rule 26-2.[3] Specifically, it pertains to whether or not Charity Williams may see such information. Ms. Williams was Catheter Connections' Chief Business Officer and In-House Counsel for approximately three years. On March 31, 2014, Ms. Williams separated from her in-house roles at Catheter Connections and began providing consulting and legal services to Catheter. She also assisted in the transition of her marketing and sales duties to a newly-hired vice president of marketing until June 18, 2014. On June 27, 2014, Ms. Williams was admitted *pro hac vice*, as an additional attorney of record for Plaintiff.[4] "Ms. Williams is now an active member of Cather Connections' outside counsel trial team involved in litigation strategy, drafting of briefs, and preparing and responding to discovery."[5]

The parties do not dispute that prior to Ms. Williams leaving Catheter that she was a competitive decision maker. The question before the Court concerns Ms. Williams new role as outside counsel and whether as a former competitive decision maker is she entitled to see Ivera's highly sensitive information such as marketing materials, customer information and costs of goods? The parties take diametrically opposed positions: Ivera asserts that such sensitive information cannot be shown to a former competitive decision maker because the risk of inadvertent disclosure is simply too great. Further, Ivera questions the necessity of Ms. Williams being part of Catheter's legal team arguing that they already have excellent capable counsel. In contrast, Catheter insists that Ms. Williams is not currently involved in competitive decision

---

[3] DUCivR 26-2.

[4] [Docket no. 222](#).

[5] Op. p. vi.

making, reports directly to lead outside trial counsel, H. Dickson Burton, and is an essential part of their legal team.

## ANALYSIS

The question presented in this dispute—whether there is an unacceptable risk of or opportunity for inadvertent disclosure of confidential information by a former competitive decision maker who is now acting as outside counsel—is one that appears to be a question of first impression. Neither the Court nor the parties were able to find any direct guidance on the matter. But, there is much guidance concerning the possibility of inadvertent disclosure of confidential information as it relates to in-house counsel and the Court finds it appropriate to rely upon those principles in this situation.

In *United States Steel Corp. v. United States*,[6] the Federal Circuit explained the quandary surrounding the inadvertent disclosure of confidential information this way:

> Like retained counsel, however, in-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions. In-house counsel provide the same services and are subject to the same types of pressures as retained counsel. The problem and importance of avoiding inadvertent disclosure is the same for both. Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision. Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined, as above indicated, by the facts on a counsel-by-counsel basis, and cannot be determined solely by giving controlling weight to the classification of counsel as in-house rather than retained.[7]

The *U.S. Steel* court used the phrase "competitive decision-making" not as a stand-alone litmus test, but as "serviceable shorthand for a counsel's activities, association, and relationship

---

[6] 730 F.2d 1465 (Fed.Cir.1984).

[7] *Id.* at 1468. *See also Brown Bag Software*, 960 F.2d 1465, 1470 (9th Cir. 1992); *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C.Cir 1980).

with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."[8] The parties cited to competitive decision making as one basis for limiting access and the court agreed that it was an example of an instance where a party should be forced to rely on outside counsel.[9] Where in-house counsel are involved, in competitive decision making, the risk of inadvertent disclosure would increase over that of retained counsel to a point where the risk of inadvertent disclosure would be unmanageable despite the best of intentions to prevent disclosure.

Perhaps the most important contribution of the *U.S. Steel* case comes from the direction to determine whether an unacceptable opportunity for inadvertent disclosure exists on a "counsel-by-counsel basis" and not solely by giving controlling weight to a counsel's title as in-house or retained.[10] Thus, the "proper analysis requires a careful and comprehensive inquiry into in-house counsel's actual (not nominal) role in the affairs of the company, his association and relationship with those in the corporate hierarchy who are competitive decision makers, and any other factor that enhances the risk of inadvertent disclosure."[11]

Here, there is no dispute that Ms. Williams was once a competitive decision maker who would not be entitled to see Ivera's "attorneys eyes only" or "outside counsel only" information. Now, however, her role and relationship with Catheter has changed. The Court cannot simply

---

[8] *U.S. Steel*, 730 F.2d 1465, 1468 n. 3 (parenthesis in original).

[9] *Id.*

[10] *Id.* at 1468.

[11] *Autotech Technolgies Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 408 (N.D.Ill. 2006); *see also Matsushita Electric Indus. Co. Ltd. v. United States Int.'l Trade Comms.*, 929 F.2d 1577, 1579 (Fed.Cir. 1991) (citing to *U.S. Steel* noting that whether an unacceptable risk for inadvertent disclosure exists is determined by the facts on a counsel-by-counsel basis); *In re Deutsche Bank Trust Co.* 605 F.3d 1373, 1378 (Fed.Cir. 2010 (same); *In re Dell*, 2012 WL 5210091 **2-3 (Fed.Cir. 2012) (considering the competitive decision making framework and the factual circumstances surrounding a counsel's activities in reaching its decision).

ignore her past role with Catheter and the close proximity in time between competitive decision maker and outside counsel/consultant does create some concern for the Court. But, this concern is overcome by Ms. Williams current responsibilities, her supervisor that she reports to who is outside counsel and the fact that pricing and marketing information rapidly changes in the now global economy. Thus in looking closely at Ms. Williams current roles in the affairs of Catheter, her association with those involved in competitive decision making at Catheter, along with other factors such as those mentioned previously, the Court is convinced there is not an unacceptable risk of inadvertent disclosure in this case.[12]

ORDER and CONCLUSION

The Court finds that based upon the facts of this case and Ms. Williams' responsibilities and roles in relation to Catheter, that there is not an unacceptable risk of inadvertent disclosure. Thus the Court need not consider the effects of whether or not Catheter may have its choice of counsel.

Ivera's Motion for Protective Order is therefore DENIED.[13]

DATED this 12 August 2014.

_____
Brooke C. Wells
United States Magistrate Judge

---

[12] During oral argument Catheter asserted that counsel **must be a current competitive decision** maker for the risk of inadvertent disclosure to warrant exclusion from certain information. The Court disagrees with this argument and a close reading of the case law does not support Catheter's position. Rather, the status of a competitive decision maker is one factor to consider, but not the sole factor. *U.S. Steel*, 730 F.2d at 1468.

[13] Docket no. 230.